SHEPHERD v. STATE.

(Division B. Nov. 12, 1923.)

[97 So. 755. No. 23512]

HOMICIDE. *Evidence held insufficient to sustain conviction of man-
slaughter.*

Under the facts, as set out in the opinion, *held* that a peremptory
instruction to find the defendant not guilty should have been
granted.

APPEAL from circuit court of Marshall county.
HON. THOS. E. PEGRAM, Judge.

J. C. Shepherd was convicted of manslaughter, and he
appeals. Reversed, and defendant discharged.

*L. A. Smith* and *Hindman Doxey,* for appellant.

The law presumes a man innocent until he is proven
guilty. The state must establish beyond all reasonable
doubt and to a moral certainty the guilt of the accused.

The burden is on the state and never shifts, and never is the defendant called upon to prove his innocence, neither is he required to overcome the state's thory but on the other hand "he is entitled to an acquittal if the evidence, or want of evidence, raises a reasonable doubt of his guilt. *Riley* v. *State,* 109 Miss. 290, 68 So. 251.

A defendant charged with a crime is presumed innocent of the crime, in its entirety and in all its material parts until the state has shown the contrary. *Cook* v. *State,* 85 Miss. 738; *Owens* v. *State,* 80 Miss. 499; *Wilkie* v. *Collins,* 48 Miss. 496; *Hampton* v. *State,* 54 So. 722.

The state must convict on affirmative testimony showing the guilt, not on the failure of the defendant to show his innocence. *Owens* v. *State,* 80 Miss. 499; *Cook* v. *State,* 85 Miss. 738.

Not only was it the court's right, but it was his duty to direct a verdict and peremptorily instruct the jury to return a verdict of not guilty for we read in Corpus Juris, 30, par. 578: "What facts excuse or justify a killing is a question of law for the court," and further under paragraph 580 (3): "What constitutes self-defense is not a question of fact for the jury, but a question of law for the court, and where the evidence on such issue is insufficient to go to the jury, or is clear and undisputed, the question whether or not self-defense existed in the particular case should not be submitted to the jury but should be determined and disposed of by the court alone, as by directing a verdict for defendant." 30 Corpus Juris, 580, and many citations; *Riley* v. *State,* 109 Miss. 286; *Sides* v. *State,* 96 Miss. 638.

Our own Mississippi supreme court has held in recent cases: If in a prosecution for murder it be clear from the evidence, viewed as a whole, that defendant acted in necessary self-defense, the court should peremptorily instruct the jury to acquit. *Sides* v. *State,* 96 Miss. 638.

While there are many authorities bearing on this case, yet the principal cases which we wish, to consider with

this learned court are those of—*Riley* v. *State,* 109 Miss. 286; *Houston* v. *State,* 117 Miss. 311; *Patty* v. *State,* 126 Miss. 98; *Bedwell* v. *State,* 130 Miss. 427.

For these reasons we feel that this Honorable Court will unhesitatingly hold that the defendant should have been given a peremptory instruction of acquittal. It is therefore most earnestly urged by counsel for appellant that in the light of the facts set forth, the decisions cited and the manifest errors of the lower court in not granting defendant a peremptory instruction, either at the close of the state's testimony, or at the conclusion of the whole testimony, this court reverse and dismiss the case and discharge the appellant.

*S. C. Broom,* Assistant Attorney-General, for the State.

Our theory of the case is this: Both men were beastly drunk and had been almost all day. This theory is justified by the facts as shown by the record. They were friends and that is conceded. The appellant herein was sick and his mind was confused as a result of his intoxicated condition. He had gone to bed, and as is frequently the case under such circumstances, he thought he needed the services of a physician, and probably he did. Then came his drunken, blundering friend into the room; he was very solicitous about the welfare of his friend who was sick. It would be useless to attempt to describe the conflicting emotions of a drunken man. There is one peculiar characteristic, however, that is perhaps universal, and that is this, if an idea ever does become firmly fixed within the mind of an intoxicated person, he immediately proceeds to execute that plan and will not be deterred therefrom. Hence, if the deceased in this case had conceived the foolish idea of taking the appellant herein who was his friend, out doors on that bleak January day to give him an ice cold bath in the frozen pond or lake, then all of his efforts would have been directed in an effort to do

just that very thing. ' And so it was with the appellant in this case. It would perhaps be impossible to analyze his state of mind on that occasion. The idea of seizing his pistol and shooting near the head of his friend to frighten him, was probably the product of his drunken brain. But it is folly to say that there was a sufficient interval of time between the two shots to have enabled the deceased to make any movement that could be reasonably construed into meaning an effort to draw a gun. There wasn't time for anything to happen except a change of thought in the befuddled brain of the appellant and he immediately executed the second thought which was to kill the man.

It is interesting to note what an absolutely sound conclusion has been arrived at by counsel for appellant, based on his theory of self-defense. A correct conclusion arrived at from a false premise. Certainly the reasoning is sound, the theory is correct, and we have no quarrel about the authorities cited. We differ on the facts and this question of facts was submitted to the jury. Now the jury adopted our view of the case and this court will not ordinarily reverse on a finding of facts. See *Thomas* ~v. *State,* 92 So. 225, and authorities cited therein.

Appellant relies upon the case of *McNeal* v. *State,* 115 Miss. 678, as going to show that the facts in this case are insufficient to warrant a conviction of manslaughter, but the McNeal case was reversed because of an erroneous instruction for manslaughter because it left out the words, "without authority of law," and therefore, denied the appellant the right to kill a human being in the lawful defense of another person, etc., as provided for in section 1230, Code of 1906, Sub-section (f). And again in the McNeal case the facts were uncontradicted. It was simply a question of law.

Argued orally by *Hindman Doxey* and *L. A. Smith,* for appellant, and, *S. C. Broom,* Special Assistant Attorney General for the State.

COOK, J., delivered the opinion of the court.

The appellant, J. C. Shepherd, was indicted for the murder of one Haywood Howell, was convicted of manslaughter, and sentenced to a term of three years in the penitentiary, and from this judgment of conviction this appeal was prosecuted.

The evidence shows that the appellant owned and operated a small store in Marshall county, and adjoining this storehouse was a room in which he and his fifteen-year-old niece resided. The appellant weighed about one hundred and fifteen pounds, had suffered the loss of one leg below the knee, and at the time of the fatal shooting was wearing an artificial leg, and was also crippled in his left arm, so that he could not straighten it, while the deceased was a much larger man, and was physically sound. The appellant and the deceased were friends, and there had been no previous difficulty between them. On the morning before the shooting in the late afternoon, the appellant and deceased had been drinking together, and both became somewhat intoxicated. Between twelve and one o'clock the appellant became sick, presumably an aftermath of his previous drunkenness, and he went to his room, and immediately went to bed, where he remained until after the fatal shooting.

Willis Carson, a witness for the state, testified that he was loading a car near appellant's room, and about three-thirty o'clock in the afternoon he went into appellant's room, and found him in bed, claiming to be sick; that he remained with him for about two hours; that during the time he was there the deceased came in the room, and borrowed two dollars from appellant, and went away; that deceased was then drunk; that about five thirty o'clock appellant requested the witness to call a doctor to treat him; that while he was gone to Potts Camp for the purpose of summoning a doctor the shooting took place; that after the shooting, at the request of appellant, he accompanied

him to town for the purpose of surrendering to the officers, and that, on his trip, appellant told the witness that he had killed the deceased, and regretted it, as he was as good friend as he had; that deceased came in the room, and sat down on his bed; that he pushed or kicked him off with his foot; that deceased rubbed appellant's face, and he then reached for his pistol, and fired for the purpose of scaring him; that deceased then reached to his pocket, and he thought he was reaching for a pistol, and that he then shot him.

Dr. Grant, a witness for the state, testified that, in response to a call, he visited appellant about six o'clock; that he reached appellant's room a few minutes after the shooting, and there found the wounded man lying across the foot of the bed, and the appellant in the bed with a pistol in his hands; that he found a bottle of "Jake" in one of the wounded man's pockets, and a large knife in a patch pocket in the front of his overalls, and that appellant then said to him:

"Doctor, I suppose I have killed a man. I had to kill him because he was coming on me. I shot him once, and he did not stop, and I had to shoot him again."

M. L. Shackelford, a witness for the state, testified that he was at or near the store when the deceased entered appellant's room; that he heard the deceased say, "John, are you dead?" and then, "You are as drunk as a damn dog and cannot help it;" that he, the witness, then got in his wagon and drove off, and when about two hundred or three hundred yards away he heard two shots, estimated by him to be about two seconds apart.

The state then offered C. H. Howell, a brother of the deceased, as a witness, and he testified to certain conversations and matters which occurred on the morning before the shooting, but this testimony was afterwards correctly excluded by the court. This was all the testimony for the state. There was a motion to exclude the state's

evidence and direct a verdict for the defendant, which motion was by the court overruled.

Appellant then took the stand as a witness in his own behalf, and testified, in substance, that during the entire afternoon of the killing he was in his bed very sick; that about two o'clock in the afternoon the deceased came into his room drunk; that he returned late in the afternoon, and sat down on his artificial leg in such manner as to cause it to twist and become very painful to him; that he caught appellant by the shoulders and began shaking him; that he informed deceased that he was hurting him, and requested him to take a chair; that deceased replied with an oath, but refused to move; that he informed the deceased that he was very sick, and requested him not to treat him that way; that his niece then requested the deceased to sit in a chair, again informing him that the appellant was sick; that the deceased still refused to move, but made an insulting reply to the little girl; that he, the appellant, then shoved the deceased with his right foot; that deceased then struck him two blows on the chest, and he then kicked the deceased; that deceased then jumped to his feet, and with his left hand caught appellant's left wrist, thereby pinning him down with his left forearm across appellant's chest, and at the same time reached for his pocket; that he, appellant, then reached with his free hand under a pillow on the bed, and secured his pistol and fired one shot to the left of the deceased for the purpose of frightening him; that by this time the deceased was on him with his knees, and, still holding to his left wrist, was reaching into the front or bib of his overalls for the purpose, as he thought, of securing a pistol; that he then fired at the deceased, believing that it was necessary to protect his life, and that the deceased usually carried a pistol in the front or bib of his overalls. The testimony of the appellant as to the facts leading up to the firing of the fatal shot is corroborated by the testimony of Edna Barnette, the niece of appellant. There were no other eye-

witnesses. In rebuttal the state offered one witness who testified that on the night after the shooting he had a conversation with Edna Barnette, in which she made certain statements in reference to the facts leading up to the shooting, which differed in some material respects from her testimony at the trial. At the conclusion of her testimony the defendant requested a peremptory instruction, which was by the court refused, and the refusal of this instruction is assigned as error.

Whatever may have been appellant's condition as to previous sobriety, the evidence is undisputed that at the time of the difficulty he was sick, and had been lying quietly in his bed in his own home for five or six hours before the difficulty. The deceased came to his bedroom, and borrowed from appellant a small sum of money, and went away. Shortly thereafter he returned to the store for the purpose of borrowing more money, and when he found that there was no money in the store he again entered appellant's bedroom, and there, over the protests and pleadings of both the appellant and his niece, he engaged in the offensive and abusive conduct which provoked the difficulty. The appellant was a cripple, and was wholly unable to cope with his drunken assailment, who was physically sound, and much larger than appellant. The appellant's testimony makes a case of self-defense, and his version of the difficulty and the facts leading up to it are entirely consistent with the physical facts in evidence, and there is nothing in the evidence offered by the state to contradict his testimony, and we are led to the conclusion that the state failed to meet the burden of proof, and that the record does not show beyond a reasonable doubt and to a moral certainty that appellant is guilty. After repeated examinations of the testimony, we are of the opinion that appellant was entitled to the peremptory instruction asked for and refused by the court, and therefore the judgment appealed from will be reversed, and appellant discharged.

*Reversed, and appellant discharged.*